**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

GIVENCHY SA

          Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

          Defendants.

Case No. 1:25-cv-5145

---

**COMPLAINT**

Plaintiff Givenchy SA ("Givenchy") brings this action against the Partnerships and Unincorporated Associations identified on Schedule A filed herewith (collectively, "Defendants") alleging as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through ecommerce stores operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Givenchy's trademarks to residents of Illinois. Each of the Defendants is committing tortious

acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Givenchy substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      Givenchy files this action to combat e-commerce store operators who trade upon Givenchy's reputation and goodwill by selling unauthorized and unlicensed products, including T-shirts, handbags, purses, and other fashion accessories, using infringing and counterfeit versions of Givenchy's federally registered trademarks (the "Counterfeit Givenchy Products"). Defendants operate e- commerce stores under one or more Seller Aliases that advertise, offer for sale and sell Counterfeit Givenchy Products to unknowing consumers.

4.      E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and giving rise to the inference that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under multiple Seller Aliases to conceal their identities and the full scope and interworking of their counterfeiting operation. Givenchy is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Givenchy Products over the Internet. Givenchy has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks because of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

5.        Givenchy is organized and existing under the laws of Italy with its principal place of business in Italy.

6.        Givenchy Products have become enormously popular and even iconic, driven by Givenchy's arduous quality standards and innovative designs. Among the purchasing public, genuine Givenchy Products are instantly recognizable as such. In the United States and around the world, the Givenchy brand has come to symbolize high quality, and Givenchy Products are among the most recognizable of their kind in the world.

7.        Givenchy Products are distributed and sold to customers through retailers throughout the United States, including in company-operated boutiques, via its e-commerce website located at www.Givenchy.com, and through a selective network of high-quality department stores in Illinois such as Nordstrom, Neiman Marcus, and Saks Fifth Avenue.

8.        Givenchy incorporates a variety of distinctive marks in the design of its various Givenchy Products. As a result of its long-standing use, Givenchy owns common law trademark rights in its trademarks. Givenchy has also registered its trademarks with the United States Patent and Trademark Office. Givenchy Products typically include at least one of Givenchy's registered trademarks. Often several Givenchy marks are displayed on a single product. Givenchy uses its trademarks in connection with the marketing of its Givenchy Products, including the following marks which are collectively referred to as the "Givenchy Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|

| 831,095 | GIVENCHY | June 27, 1967 | For: dresses, cloaks, capes, skirts, jackets, suits, two-piece costumes or suits, coats, sweaters, bodices, pullovers, stockings, ties, scarves, hats, gloves in class 25. |
| 1,077,345 | GIVENCHY | November 15, 1977 | For: jewelry-namely, necklaces, rings, bracelets, brooches, ear-rings, pendants, and cuff links in class 14. |
| 1,336,562 | GIVENCHY | May 21, 1985 | For: small leather goods-namely, briefcases, briefcase type portfolios, traveling bags, handbags, suitcases, purses, credit and business card cases, wallets, billfolds, key cases, tote bags in class 18. |
| | | | For: clothing for men and women, namely, shirts, blouses, tops, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | slacks, jeans, pants, shorts, skirts, coats, sport coats, jackets, suits, sweaters, cardigans, robes, fur coats, fur jackets, formal suits and tuxedos, formal dresses and gowns, neckwear, ties, scarves, shoes, belts, rainwear in class 25. |
| 3,323,677 | GIVENCHY | October 30, 2007 | For: eyeglasses; sunglasses; eyeglass frames; sunglass frames; eyeglass cases; sunglass cases in class 9. |
| 4,705,854 | GIVENCHY SEVENTEEN | May 24, 2015 | For: spectacles; sunglasses; spectacle cases in class 9. For: watches; watch straps; watch cases in class 14. |

| 4,705,855 | GIVENCHY FIVE | March 24, 2015 | For: spectacles; sunglasses; spectacle cases in class 9.<br><br>For: watches; watch straps; watch cases in class 14. |
| 4,705,856 | GIVENCHY SEVEN | March 24, 2015 | For: spectacles; sunglasses; spectacle cases in class 9. |
| 4,705,857 | GIVENCHY ELEVEN | March 24, 2015 | For: spectacles; sunglasses; spectacle cases in class 9.<br><br>For: watches; watch straps; watch cases in class 14. |
| 5,415,172 | ANTIGONA | March 6, 2018 | For: Boxes of leather or imitation leather; Leather traveling bags; Leather traveling sets, namely, coordinated luggage for traveling; Suitcases; Garment bags for travel; Unfitted vanity cases; Backpacks; Handbags; Briefcases of leather; Leather wallets; Leather coin purses; Leather credit card cases, Leather business card cases; Leather key cases; Umbrellas in class 18. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 1,282,216 | | June 19, 1984 | For: sunglasses, optical frames in class 9.<br><br>For: jewelry in class 14.<br><br>For: shoulder bags, general purpose carry bags, handbags, tote bags in class 18.<br><br>For: clothing for men and women, namely, ties in class 25. |

| 2,488,088 | | September 11, 2001 | For: jewelry, bracelets, necklaces, chains, rings, earrings, pendants in class 14. |
|---|---|---|---|
| 4,798,361 | | August 25, 2015 | For: boxes of leather or imitation leather; travelling bags, traveling sets comprised of bags and suitcases made of leather, trunks and suitcases, garment bags for travel; vanity cases not fitted; rucksacks, handbags; leather briefcase; wallets, purses, key cases made of leather; umbrellas in class 18.<br><br>For: clothing and underwear, namely, shirts, T-shirts, sweaters, vests, skirts, dresses, pants, coats, jackets, belts for clothing, scarves, gloves, ties, socks, underwear, swimwear, nightwear, shoes; headgear, namely, hats and caps in class 25. |

9.      The Givenchy Trademarks have been used exclusively and continuously in the U.S. by Givenchy and have never been abandoned. The above U.S. registrations for the Givenchy Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as Exhibit 1 are true and correct copies of the U.S. Registration Certificates for the Givenchy Trademarks included in the above table. The registrations for the Givenchy Trademarks constitute prima facie evidence of their validity and of Givenchy's exclusive right to use the Givenchy Trademarks pursuant to 15 U.S.C. § 1057(b).

10.     The Givenchy Trademarks are exclusive to Givenchy and are displayed extensively on Givenchy Products and in Givenchy's marketing and promotional materials. Givenchy Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Givenchy has expended millions of dollars annually in advertising, promoting, and marketing featuring the Givenchy Trademarks. Because of these and other factors, the Givenchy name and the Givenchy Trademarks have become famous throughout the United States.

11.     The Givenchy Trademarks are distinctive when applied to Givenchy Products, signifying to the purchaser that the products come from Givenchy and are manufactured to Givenchy's quality standards. Whether Givenchy manufactures the products itself or licenses others to do so, Givenchy has ensured that products bearing its trademarks are manufactured to the highest quality standards. The Givenchy Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Givenchy Trademarks is of incalculable and inestimable value to Givenchy.

12.     Givenchy operates an e-commerce website where it promotes Givenchy Products at Givenchy.com. Givenchy Products are featured and described on the website and are available

for purchase. The Givenchy.com website features proprietary content, images, and designs exclusive to Givenchy.

13.     Givenchy has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Givenchy Trademarks. As a result, products bearing the Givenchy Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Givenchy. Givenchy is a multi-million-dollar business, and Givenchy Products have become among the most popular of their kind in the world.

14.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Givenchy. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Givenchy to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Givenchy intends to take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16.     The success of the Givenchy brand has resulted in its significant counterfeiting.

17. Consequently, Givenchy has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Givenchy has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were targeting and/or offering for sale Counterfeit Givenchy Products to consumers in this District and throughout the United States.

18. According to U.S. Customs and Border Protection ("CBP"), in fiscal year 2021 "CBP made over 27,000 seizures . . . with an estimated manufacturer's suggested retail price (MSRP) of over $3.3 billion, which represents an increase of 152% over the previous Fiscal Year, when goods valued at $1.3 billion MSRP were seized for IPR [Intellectual Property Rights] violations." (*See* Exhibit 2, Fiscal Year 2021 Intellectual Property Rights Seizure Statistics Report, at 5.) In FY 2021, over 24,000 of the IPR seizures (about 89 percent of the total) were shipped via mail or express services (as opposed to cargo or other means). (*Id.* at 37.) Over 50 percent of the IPR seizures (with an MSRP of over $2.5 billion) originated from China and Hong Kong. (*Id.* at 35.)

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." (*See* Exhibit 3, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).)

20. In its report on "Combating Trafficking in Counterfeit and Pirated Goods," the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans found that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to

begin selling" and recommended that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. (Exhibit 4 hereto at 11, 35 (Jan. 24, 2020).) The report also notes that counterfeit products account for billions in economic losses, resulting in millions of lost jobs for legitimate businesses. (*Id.* at 18-19.)

21. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store fronts. (*Id.* at 22.) Since platforms generally do not require a seller to identify its underlying business entity, counterfeiters can have many different profiles that appear unrelated even though they are commonly owned and operated. (*Id.* at 39.) Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." (*Id.* at 25.)

22. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Givenchy Products to residents of Illinois.

23. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal, among other methods. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Givenchy has not licensed or authorized Defendants to use

any of the Givenchy Trademarks, and none of the Defendants are authorized retailers of genuine Givenchy Products. Many Defendants also deceive unknowing consumers by using the Givenchy Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract search engines crawling the Internet looking for websites relevant to consumer searches for Givenchy Products. Other e-commerce stores operating under Seller Aliases omit using the Givenchy Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Givenchy Products.

24.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Givenchy Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics,

similarities in price and quantities, the same incorrect grammar or misspellings, and/or the use of the same text and images. Additionally, Counterfeit Givenchy Products for sale by the Seller Aliases

bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Givenchy Products were manufactured by and come from a common source and that Defendants are interrelated.

27.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Givenchy's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Givenchy.

29.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to manufacture, import, distribute, offer for sale, and sell Counterfeit Givenchy Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without authorization or license from Givenchy, have jointly and severally, knowingly and willfully used and continue to use the Givenchy Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Givenchy Products into the United States and Illinois over the Internet.

30.     Plaintiff asserts that joinder of Defendants is proper under Rule 20(a)(2) of the

Federal Rules of Civil Procedure. Defendants are properly joined because their conduct arises out of the same series of transactions or occurrences.

31.     The facts in this case are different than Estee Lauder. Estee Lauder, Case No. 19-cv-7878 (N.D. Ill. Jan. 27, 2020). In Estee Lauder, this Court found that "not all of the Defendants use the same product image and product descriptions" Id. at 11. This Court acknowledged reliance on "unique images, unique word and sentence construction, or the same misspellings or grammar mistakes to infer that the subset of online retailers using those same images or those same descriptions are connected to one another" in the past to establish joinder. Id. at 11-12.

32.     Following Estee Lauder, this Court has allowed joining nearly a dozen defendants with similar infringing evidence in Khara Inc. et al. v. Partnerships and unincorporated Associations Identified in Schedule A, No. 23-cv-01230 (N.D. Ill. Mar. 15, 2023), ECF No. 24. Similarly, this Court found joinder is proper where Defendants use "the same fake brand name and same manufacture, plus the same unique fanciful color name for the goods." Tobias Teixeira Da Fonseca v. The Partnerships and Unincorporated Associations Identified on Schedule A, No. 23cv-02485 (N.D. Ill. May. 11, 2023), ECF No. 20.

33.     Contrary to Estee Lauder, the Defendants are interconnected through common marketing practices, including appearing on the same Reddit forums, using the WhatsApp platform to sell Givenchy counterfeits, procuring from the same factory, similar logistical operations and the use of identical or nearly identical product images and descriptions. The deliberate use of identical marketing materials, coordinated presence on niche counterfeiting platforms, overlapping supplier and logistical strategies and common communication methods support the conclusion that these sellers operate as part of the same transaction or series of transactions. Therefore, joinder is proper under Fed. R. Civ. P. 20(a)(2).

34. Defendants' unauthorized use of the Givenchy Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Givenchy Products, including the sale of Counterfeit Givenchy Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Givenchy.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

35. Givenchy hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Givenchy Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Givenchy Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Givenchy Products offered, sold, or marketed under the Givenchy Trademarks.

37. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Givenchy Trademarks without Givenchy's permission.

38. Givenchy is the exclusive owner of the Givenchy Trademarks. Givenchy's United States Registrations for the Givenchy Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Givenchy's rights in the Givenchy Trademarks and are willfully infringing and intentionally using counterfeits of the Givenchy Trademarks. Defendants' willful, intentional, and unauthorized use of the Givenchy Trademarks

is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Givenchy Products among the general public. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.     Givenchy has no adequate remedy at law, and if Defendants' actions are not enjoined, Givenchy will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Givenchy Trademarks.

40.     The injuries and damages sustained by Givenchy have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Givenchy Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

41.     Givenchy hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

42.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Givenchy Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Givenchy or the origin, sponsorship, or approval of Defendants' Counterfeit Givenchy Products by Givenchy.

43.     By using the Givenchy Trademarks on the Counterfeit Givenchy Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Givenchy Products.

44.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Givenchy Products to the general public involves the

use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125. Givenchy has no adequate remedy at law and, if Defendants' actions are not enjoined, Givenchy will continue to suffer irreparable harm to its reputation and the goodwill of its Givenchy brand.

**PRAYER FOR RELIEF**

WHEREFORE, Givenchy prays for judgment against Defendants as follows:

a.    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

- Using the Givenchy Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Givenchy Product or is not authorized by Givenchy to be sold in connection with the Givenchy Trademarks;

- Passing off, inducing, or enabling others to sell or pass off any product as a genuine Givenchy Product that is not Givenchy's or not produced under the authorization, control, or supervision of Givenchy and approved by Givenchy for sale under the Givenchy Trademarks;

- Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Givenchy Products are those sold under the authorization, control or supervision of Givenchy, or are sponsored by, approved by, or otherwise connected with Givenchy;

- Further infringing the Givenchy Trademarks and damaging Givenchy's goodwill;

and

- Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in and manner, products or inventory not manufactured by or for Givenchy, nor authorized by Givenchy to be sold or offered for sale, and which bear any of Givenchy's trademarks, including the Givenchy Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

b.      For entry of an Order that, upon Givenchy's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Givenchy Trademarks;

c.      That Defendants account for and pay to Givenchy all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Givenchy Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

d.      In the alternative, that Givenchy be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Givenchy Trademarks;

e.      That Givenchy be awarded its reasonable attorneys' fees and costs; and

f.      That awards Givenchy any and all other relief that this Court deems just and proper.

Dated  May 9, 2025                    Respectfully submitted,


*Counsel for Plaintiff Givenchy SA*
Paul Kossof. (ARDC #6319307)
KossofIPR
875 N. Michigan Ave, Suite 3115
Chicago, IL 60611
224-433-1553
p.kossof@kossofipr.com